UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| STINA DENK<br>on behalf of herself and all<br>others similarly situated,<br><br>       Plaintiffs,<br><br>v.<br><br>PINE RIDGE ASSISTED LIVING CENTER<br>OF WISCONSIN RAPIDS LLC,<br>a Domestic Corporation, and<br><br>PINE RIDGE ASSISTED LIVING CENTER<br>OF COLBY LLC,<br>a Domestic Corporation, and<br><br>SANDY MILLER,<br><br>       Defendants. | CASE NO. 11-CV-210<br><br>DECLARATION OF BONNIE MARCOTT<br>IN SUPPORT OF MOTION FOR CONDITIONAL CERTIFICATION |

I, Bonnie Marcott, pursuant to 28 U.S.C. § 1746 state as follows:

  1. I am over eighteen (18) years of age and am competent to testify as to the matters set forth in this declaration. I make this declaration on the basis of my personal knowledge in support of Plaintiffs' Motion For Conditional Certification.

  2. I was employed by Pine Ridge Assisted Living Center ("Pine Ridge") from August 17, 2010 to present. During this time period, I worked as a CNA.

  3. I regularly worked alongside of and with various other hourly employees including other Certified Nursing Assistants, Caregivers, Team Leads, Housekeepers, Cooks and other hourly staff. While working, I spoke with these employees about work related topics including Pine Ridge Assisted Living compensation policies and practices and how these employees were paid by Pine Ridge.

  4. I work at Pine Ridge's Colby facility located at 1110 North Division Street, Colby, WI 54421.

5. Ms. Stina Denk was the Assisted Living Director at Pine Ridge's Colby facility. In this position, she directed my day-to-day work, she supervised my work, and it was her job to inform me of Pine Ridge's employment and compensation policies and practices and ensured that these policies and practices were followed.

6. Ms. Gail Wilkins is the Regional Director and oversees the day-to-day operations of Pine Ridge's Colby and Wisconsin Rapids facilities.

7. Ms. Wilkins is responsible for scheduling and payroll. As such, she handles when employees work and replacing employees on the schedule when absences occur.

8. Ms. Wilkins explained and enforced Pine Ridge's policies and practices, including Pine Ridge's compensation policies and practices, and directed various aspects of my day-to-day work.

9. When I was first employed at Pine Ridge I worked the P.M. shift from 2:00 P.M. to 10:00 P.M. In March 2011, I began working the A.M. shift from 6:00 A.M. to 2:00 P.M. Occasionally, when other employees did not show up for their shift or there was work that needed be done, I was required to stay beyond my scheduled shift or work a double shift.

10. Pine Ridge provided me with a handbook. This handbook was given to me when I started working for Pine Ridge. Specifically, Ms. Stenk, the Assistant Director provided me a copy of the handbook which explains the rules, policies and procedures regarding my employment with Pine Ridge. Attached to this declaration is a true and correct copy of a page (Bates Stamped DENK0000014) from Pine Ridge's handbook which explains Pine Ridge's compensation policies regarding overtime compensation.

11. Pine Ridge's policy with regard to overtime is that time and one half my regular rate will be paid only for hours I worked over eighty hours in a two week period. When I worked over forty hours in a week, I was not paid overtime unless the hours I worked added to more than eighty in the two week pay period. This policy was explained and enforced by Ms. Stenk.

12. Despite regularly working in excess of eight hours a day, I was not paid overtime compensation at a rate of one and one-half my hourly rate for the hours I worked in excess of eight hours a day.

13. Other employees who I worked with worked under the same 80 hour overtime policy from the handbook. These employees told me that they worked more than eight hours in a day without receiving overtime compensation. Pine Ridge's overtime policy applied to all of Pine Ridge's hourly employees.

14. I regularly worked beyond the time my shift was scheduled to end. However, despite working beyond my scheduled shift, I was not always paid for the additional hours because my supervisor would change my time records to make it appear that I stopped working at the end of my scheduled shift.

15. Pine Ridge's policy was that if I worked beyond my scheduled shift, I had to leave a note for my supervisor indicating that I worked past my scheduled shift that day. Ms. Wilkins explained that is was Pine Ridge's policy that if we punched our timecard after our scheduled shift, Pine Ridge's would assume that we were not working and would change our timesheet so that it would reflect that we punched out at the end of our scheduled shift. Ms. Wilkins explained that this policy was applicable to me and Pine Ridge's other hourly employees.

16. Despite leaving a note, there were times that Ms. Wilkins would still change my timesheet to my scheduled shifts because the reason on my note was not an acceptable reason. There were other times that I punched out and kept working because I knew that the reason was not an acceptable reason to Pine Ridge.

17. I believe that if the Court were to give notice to Pine Ridge's other employees that they have a right to join this litigation and that it is illegal for Pine Ridge to retaliate against them based on participation in this litigation, a large number of Pine Ridge's current and former employees would join this lawsuit. I am personally aware of, and have spoken with, other current or former employees of Pine Ridge who will (or desire to) join this litigation if they are given notice of it and the opportunity to join.

18. I have read the above statements and they are true and accurate to the best of my knowledge.

19. I declare, under penalty of perjury that the foregoing is true and correct.

_____
Bonnie Marcott

Executed this 15th day of April 2011

- Smoking in any area not specifically designated as a smoking area
- Engaging in conduct that creates an unsafe work environment
- Failure to complete reports promptly and accurately
- Unauthorized parking
- Discourteous treatment or the use of profanity or threatening language toward our resident, their families, visitors, supervisors, co-workers, resident's physician, or other health care professionals
- Loitering before or after your work time
- Conducting personal business on Company property, including promoting or selling any item or soliciting contributions
- Failing to observe standards of dress, hygiene, uniform, or not wearing an appropriate identification badge
- Failure to observe safety rules and practices
- Breach of Confidentiality
- Failure to observe Company rules or generally accepted standards of conduct

This list is not all-inclusive and, notwithstanding this list, all employees remain employed "at will".

# WAGES AND PAYROLL PRACTICES

### Wages
Wages for Pine Ridge employees are on a pay scale according to experience and certifications. The initial pay is decided by the manager/supervisor and will be agreed upon on hire. After the 90-day probationary period when a review is done, the staff has the potential of up to a $.50/hour increase.

### Overtime
Overtime in our facility will be avoided whenever possible. Change of shifts and picking up shifts may not be approved if it puts a caregiver into overtime. Overtime is considered to be anything over 80 hours/bi-weekly.

### Rules and Use of the Time Clock
Employees are expected to punch in before and after their scheduled shift on time and promptly. An employee is not to punch in more than 7 minutes before their scheduled shift, unless approved by the manager. An employee must also not punch out more than 7 minutes early or late from their shift unless approved. Employees must only punch in and out only for themselves, they are not permitted to punch in or out for another employee.