IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

STINA DENK
on behalf of herself and all
others who opted into this matter,

       Plaintiffs,                            Civil Action No. 11-CV-210

      v.

PINE RIDGE ASSISTED LIVING
CENTER OF WISCONSIN RAPIDS
LLC, et al,

       Defendants.

**JOINT MEMORANDUM OF LAW IN SUPPORT OF PETITION
FOR CLASS COUNSEL'S COSTS AND ATTORNEYS' FEES**

      Set forth below is the Parties' agreed-upon submission in response to the Court's June 11, 2012 Order seeking sufficient information to allow the Court to review the FLSA settlement. The parties seek the Court's approval of the Fed. R. Civ. P. 68 offer of judgment resolving all claims of Plaintiff and the opt-ins ("Plaintiffs") in this FLSA collective action relating to Defendants Pine Ridge Assisted Living Center of Wisconsin Rapids, LLC, Pine Ridge Assisted Living Center of Colby, LLC, and Sandy Miller ("Defendants"), (collectively "the Parties").

      On March 22, 2011, Plaintiff, Stina Denk, on behalf of herself and others similarly situated, filed this lawsuit against the Defendants alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* for unpaid wages, liquidated damages, costs, and attorneys' fees. (Dkt. 1.) On May 8, 2011, Plaintiffs moved the Court for conditional certification of the collective action. (Dkt. 22.) Thereafter, the Parties stipulated to FLSA conditional certification and on June 1, 2011, the Court conditionally certified a collective action consisting

1

of all persons who are or have been employed by Defendants as an hourly employee within three years of March 22, 2011 and who were not paid overtime for time worked over forty hours in a workweek and/or eight hours in a workday. (Dkt. 42, 45.) Since the commencement of this action, 62 additional current and former employees of the Defendants have opted into the case as additional plaintiffs. (Johnson Decl. ¶ 3.)

Plaintiff's complaint contends that Defendants have failed to pay Defendants' employees the wages and overtime compensation to which the employees are statutorily entitled under the FLSA and Wisconsin state wage law. (Dkt. 1.) Defendants deny these allegations and believe they have various defenses to all of Plaintiffs' claims. (Dkt. 17.) However, Defendants recognize that the issues presented are unlikely to be resolved without extensive, costly and time consuming further litigation.

Plaintiffs and Defendants share an interest in fully and finally resolving the issues raised in this case. Because the Parties recognize the expense and difficulty of continuing to prosecute the above-captioned lawsuit through trial and subsequent appeals, as well as the risk and uncertainty of the outcome inherent in any such litigation, the parties have agreed to be bound by the FED. R. CIV. P. 68 Offer of Judgment they now ask this Court to approve. (Johnson Decl. ¶ 4.) Moreover, the Parties recognize that due to Defendants' very real financial constraints, continuing the pursuit of this litigation would likely result in Defendants attorneys' fees extinguishing the entirety of Defendants' insurance policy limits leaving Plaintiffs with no compensation. (Johnson Decl. ¶ 5.) For these reasons, more fully set out below, the Parties ask the Court to approve the Rule 68 Offer of Judgment as a fair and reasonable resolution of this case.

**I. Summary of Plaintiff's claims for unpaid overtime and Defendants' defenses.**

Defendants provide residential living services in the form of community-based residential facilities in Colby and Wisconsin Rapids, Wisconsin. Defendants employ employees in various hourly positions including certified nursing assistants, caregivers, team leads, housekeepers and cooks. (Johnson Decl. ¶ 6.)

Plaintiff's complaint, on behalf of themselves and similarly-situated employees, averred that Defendants underpaid their employees' overtime wages, in violation of the Fair Labor Standards Act (FLSA) and Wisconsin state law. (Dkt. 1.) The conditionally certified class of plaintiffs consists of 63 hourly paid employees of Defendants. Specifically, Plaintiffs contend that Defendants operated an unlawful compensation system that deprived current and former hourly employees of overtime wages in two ways. (*Id*.) First, Plaintiffs alleged Defendants violated the FLSA by averaging overtime between two workweeks without paying overtime compensation when employees worked over eight hours a day. *See* 29 U.S.C. § 207(j). (*Id*.) Second, Plaintiffs also claimed that Defendants shaved time from punches by modifying time records from original punches to the scheduled hours. (*Id*.)

The Defendants asserted numerous defenses to Plaintiffs' claims and those brought on behalf of putative collective action members. (Dkt. 17.) First, Defendants contend that they have properly paid all employees for compensable activities pursuant to the FLSA and Wisconsin law. (*Id*.) Defendants contend they acted in good faith and in a reasonable reliance on the law. (*Id*.) Defendants contend that Plaintiff and the opt-ins are not similarly situated and therefore collective treatment moving forward is not appropriate because of variations in damages and individual experiences. (*Id*.)

Plaintiffs maintain that there were many strong aspects of their case, including the fact that Defendants' time shaving and pay policies left an electronic footprint in their payroll

3

records. (Johnson Decl. ¶ 7.) However, Defendants also maintain that there were many strong legal and factual defenses to Plaintiffs' claims and had Plaintiffs continued to litigate this case, they would have faced many difficult substantive and procedural obstacles, including that there is no guarantee of success. Even if Plaintiffs were successful at trial, Defendants' financial position is of such a nature that Plaintiffs would likely have been unable to recover on any judgment outside of the policy limits. (Johnson Decl. ¶ 8.) In addition to the ever-present risks and costs of trial and appeal, Plaintiffs would have expended significant resources on discovery (including individualized discovery) and experts. (Johnson Decl. ¶ 9.) Moreover, Plaintiffs were faced with the procedural challenge of maintaining the collective nature of this action. In other words, there was a significant risk that Plaintiffs would not have had the opportunity to proceed to trial on a collective basis, let alone recover any money at all. (Johnson Decl. ¶ 10.)

In sum, there are significant and highly complex questions concerning whether, and if so, to what extent the various employees may have been underpaid their statutorily-required wages. Moreover, the settlement of this matter provides a substantial and immediate benefit to Plaintiffs. If this matter was not mutually resolved, the Parties would have engaged in a vigorous and contested dispute as to many aspects of the case. (Johnson Decl. ¶ 11.)

**II.  The Parties engaged in arms-length negotiations to settle the case including a full day's mediation.**

Shortly after filing their complaint, during the scheduling conference, the Parties alerted the Court of their intentions to attempt to resolve the dispute through early mediation. Prior to the mediation, the Parties engaged in preliminary discovery including the production of various time records. The Parties developed competing preliminary damage models based off of those records. (Johnson Decl. ¶ 12.) The Parties attended one-day mediation on Sunday November 12, 2011 at the offices of Defendants' counsel. The mediation was conducted by Michael Leech – a

4

mediator with considerable experience in mediating multi-plaintiff wage and hour cases. (Johnson Decl. ¶ 13.)

During the mediation, Defendants indicated that they were faced with certain financial difficulties and that the entirety of Defendants' assets were pledged as collateral to a bank note which Defendants were in forbearance on. (Johnson Decl. ¶ 14.) Defendants also indicated that there was an insurance policy in the amount of $100,000.00 which was depleting as the litigation progressed. (Johnson Decl. ¶ 15.) At mediation, the Parties reached a partial agreement. (Johnson Decl. ¶ 16.) Thereafter, Defendants provided certain financial information to Plaintiffs including three years of tax returns for Defendants and related entities, Defendants' financial statements, a forbearance agreement signed by all Defendants, and liens placed on Defendants' real and personal property. (Johnson Decl. ¶ 17.) After reviewing these documents, specifically the forbearance agreement which encumbered all real and personal property of Defendants, it was determined that Defendants had no assets or collateral that could be used to pay any future judgment outside of the remainder of the policy limit. (Johnson Decl. ¶ 18.)

The Parties discussed what remained in Defendants' insurance policy limit and Plaintiffs attempted to negotiate for damages in addition to the policy limit. Those negotiations failed. (Johnson Decl. ¶ 19.) The parties ultimately agreed to resolve the case based on the policy limit - $71,000. (Johnson Decl. ¶ 20.) This was in the best interest of the Plaintiffs as it avoided further litigation and an increase in attorneys' fees which would likely exceed the policy limit based on Defendants' attorneys' fees alone. (Johnson Decl. ¶ 21.) To effectuate the settlement, the Parties agreed that Defendants would serve Plaintiffs with a Rule 68 Offer of Judgment in the amount of the remaining policy limit which was later filed with the Court. (Dkt. 75.)

### III. Each opt-in Plaintiff will receive a pro-rata portion of the settlement fund based upon their years of service and their hourly rate.

After attorneys' fees and costs are accounted for,[1] the remainder of the fund ($38,512.84) will be split among the class members based on a pro-rata calculation of the workweeks in the recovery period and the Plaintiffs hourly rate of pay. (Johnson Decl. ¶ 22.) The result of this split is that each opt-in member will receive almost one hour[2] of additional compensation for each workweek he or she worked for Defendants, after attorneys' fees and costs are accounted for. (Johnson Decl. ¶ 23.)

Plaintiffs' Counsel calculated the settlement allocations based on information provided by Defendants specific to each opt-in. Moreover, the information provided by Defendants was confirmed with each opt-in. Specifically, the allocation is based on each individuals dates of employment during the statutory period, their hourly rate of pay during that period and the date they opted into this action. Defendants had produced to Plaintiffs' counsel information containing Plaintiffs first day of work, last day of work, and rate of pay. Upon resolution, a letter was sent to each opt-in by Plaintiffs' Counsel requesting each opt-in confirm their dates of employment and their rate of compensation. These numbers, along with each Plaintiffs' opt-in date, were inputted into an Excel spreadsheet to calculate the number of workweeks for which each Plaintiff could recover damages within the FLSA's statute of limitations period. Then a calculation was performed so that each Plaintiff would receive a pro-rata portion of the funds with the variables controlling each individual amount being the number of workweeks in the recovery period and the individual rate of pay. The result of this calculation is exhibited in Plaintiffs' Revised Notice of Acceptance. (Dkt. 77-2.) That result is a payment of approximately

---

[1] Section E below addresses the Plaintiffs' Attorneys' fees and costs.
[2] Each opt-in plaintiff will receive 59.645 minutes of compensation for each workweek he or she worked within the recovery period.

one hour at their regular rate of compensation for each workweek each Plaintiff worked for Defendants during the applicable statutory period. (Johnson Decl. ¶ 24.)

    IV.    **The Court should approve the Settlement**

        **A. General standard of review in FLSA cases**

It is generally accepted that court approval of the settlement of FLSA collective action settlements is necessary to effectuate a valid and enforceable release of the FLSA claims asserted by the Plaintiffs. *See Walton v. United Consumer Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986) (citing *Lynn's Food Stores, Inc. v. United States Dept of Labor*, 679 F.2d 1350, 1354-55 (11th Cir. 1982) *Moore v. Ackerman Investment Co.*, No. C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept, 1 2009). If the settlement reflects a reasonable compromise over issues that are actually in dispute, the Court may approve the settlement "in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

Opt-in plaintiffs have given their consent to join in this action, and therefore the rights of non-parties will not in any manner be compromised or jeopardized by the settlement process. Because the individual rights of non-parties will not be affected if the Court approves the settlement agreement, it is not necessary for the Court to conduct a Rule 23-type fairness hearing. *McElmurry v. U.S. Bank Nat. Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007); *Moore*, 2009 WL 2848858, at *2. At most, all that may be necessary is for the Court, if it deems this necessary and appropriate, to schedule a brief hearing to enable counsel for the parties to explain the settlement in greater detail and to answer any questions the Court may have concerning specific settlement provisions.

Because the rights of non-parties will not in any manner be compromised or jeopardized by the settlement process, it is not necessary to require published notice of any hearing the Court may wish to schedule before deciding whether to approve the settlement agreement. It is well-

settled that employee rights under the FLSA may not be waived by unsupervised releases. *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). However, Section 216(b) allows an employee to waive his or her FLSA rights through either of two specific methods: where the settlement is approved and administered by the Department of Labor or through a stipulated judgment after a court has reviewed and approved the agreement for fairness. *See* 29 U.S.C. § 216(b).

### B. This settlement is consistent with the purpose of an FLSA collective action.

The settlement enables Plaintiffs to obtain a recovery without incurring unnecessary litigation costs and attorneys' fees. By participating in this collective action settlement, Plaintiffs can tap into the efficiencies and economics of the collective action device, which enables workers with low-dollar individual claims to pursue their FLSA rights by pooling resources with similarly-situated workers. *See Evans v. Lowe's Home Centers, Inc*., 2006 U.S. Dist. LEXIS 32104, *15 (M.D. Pa. May 18, 2006) (FLSA collective action device serves objectives of "lowering cost and limiting the controversy to one proceeding to efficiently resolve the common issues of law and fact"); *see, also*, *Deposit Guaranty Nat. Bank, Jackson, Miss. V. Roper*, 445 U.S. 326, 339 (1980) ("[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class action device").

### C. This settlement enables Plaintiffs to avoid significant litigation risk.

Where, as here, settlement enables the Plaintiffs to avoid the uncertainties of litigation settlement is especially favored. As one court has observed, "[a]very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig*., 912 F. Supp. 822, 838 (W.D. Pa. 1995); *West Virginia v. Chas. Pfizer & Co.*, 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970) ("It is known from past experience that no

matter how confident one may be of the outcome of litigation, such confidence is often misplaced."), *aff'd*, 440 F.2d 1079 (2d Cir. 1971). Plaintiffs face significant risks if they proceed with this litigation, which would entail, among other things, a hearing on decertification of the FLSA collective action, dispositive motion practice, and possibly a time consuming and stressful trial. Moreover, so doing would have involved answering individualized discovery for each of the sixty-three plaintiffs.

> **D. There is a presumption of fairness for settlements reached as a result of arms-length negotiations.**

It is well established that settlements negotiated by experienced counsel that result from arms-length negotiations are entitled to deference from the Court. *See, e.g., In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003) ("A presumption of corrections is said to attach to a class settlement reached in arms'-length negotiations between experienced, capable counsel after meaningful discovery."); *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("settlement negotiations took place at arm's length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight.").

This is particularly true in the context of an FLSA collective action settlement, where the standard for approval is lower than a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as a Rule 23 settlement. Courts thus approve FLSA settlements when they are reached as the result of contested litigation to resolve *bona fide* disputes. *See Lynn's Food Stores, Inc., supra*. 679 F.2d at 1353, n.8. Typically, the courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Id*. at 1353-54. Other courts in surrounding jurisdiction routinely approve settlements reached in FLSA actions similar to the settlement presented here. *See, e.g., Sharpe v.*

9

*APAC Customer Svcs., Inc.*, Order Granting Plaintiff's Motion for Approval of FLSA Collective Action Resolution, No. 09-cv-329 (W.D. Wis. June 16, 2010); *Kelly v. Bluegreen Corp.*, Order Granting Final Approval of FLSA Settlement Dismissing Case, No. 08-cv-401 (W.D. Wis. June 7, 2010); *Perry v. Nat'l City Bank*, Order Approving Settlement, Attorneys' Fees and Service Awards, No. 05-cv-891 (S.D. Ill. March 3, 2008). Courts are also mindful of the strong presumption in favor of finding a settlement fair. *See Cotton v. Hinton*. 559 F.2d 1326, 1331 (5th Cir. 1977).

Here, the Parties are confident that the Court will agree, after scrutinizing the provisions of the Offer of Judgment in light of the circumstances leading to it, that this agreement is the product of vigorous, arms-length negotiations between experienced counsel. Moreover, the result is the best result available to Plaintiffs considering Defendants current financial constraints. The undersigned counsels have substantial experience litigating complex FLSA collective actions. During negotiations, the Parties were also assisted on multiple occasions by Michael Leech, a highly regarded and experienced mediator, who helped the parties reach agreement on the terms of the settlement and the procedures to be utilized in carrying out this settlement. (Johnson Decl. ¶ 13.)

In sum, the settlement is a fair and reasonable resolution of contested claims arising out of a *bona fide* dispute over FLSA liability and should be approved. The Plaintiffs are represented by counsel who, "in the adversarial context of a lawsuit," negotiated for the Plaintiffs a "reasonable compromise of disputed issues." *Lynn's Food Stores*, at 1354. Additional factors indicating fairness are present, including the exchange of sufficient information to inform the parties and the court of the issues, that the parties conserved substantial time and expense that would have been required had the case gone to trial, that, by settling, the class members have

avoided a much longer wait before they receive any monies. In this case, there is no doubt that there exists a *bona fide* dispute between the parties over significant issues of fact and law concerning the scope and application of the FLSA and state law to Plaintiffs' claims that the Defendants compensation practices violated the FLSA. Even if Plaintiffs ultimately prevail on part or all of their claims, a lengthy, time consuming and expensive process of litigating and apportioning damages will be required, resulting in a considerable delay before any of the Plaintiffs will ever receive any monetary recovery. This assures any recovery could be had when considering Defendants' bleak financial outlook.

### E. The offer of judgment provides for payment of reasonable attorneys' fees and costs.

Attorneys Larry A. Johnson, Noah Reinstein and Nola J. Hitchcock Cross served as lead counsel for Plaintiffs and the Opt-in Plaintiffs in this matter ("Plaintiffs' Counsel"). In this case, Plaintiffs' Counsel's legal services have included numerous in-person and telephonic conferences with Plaintiffs and other putative class members. (Johnson Decl. ¶ 25.) Plaintiffs' Counsel spent substantial time and effort researching applicable wage and hour law pertaining to the merits of this case and Defendants use of the 8/80 compensation scheme. (Johnson Decl. ¶ 26.) In addition to Plaintiffs' Counsel preparing the Complaint, Plaintiffs' Counsel obtained declarations from various opt-ins at two different facilities and filed a motion for conditional certification. (Johnson Decl. ¶ 27.) Plaintiffs' Counsel facilitated notice and filed the consent forms received with the Court. Sixty-three individuals opted into the lawsuit. (Johnson Decl. ¶ 28.)

Plaintiffs' Counsel spent time on written discovery to obtain certain time records. (Johnson Decl. ¶ 29.) Plaintiffs' Counsel also spent numerous hours preparing, modifying, and reviewing various damage models and calculations. (Johnson Decl. ¶ 30.) Throughout the case,

11

Plaintiff's Counsel met regularly with Plaintiff, discussed the status of pending matters and analyzed strategies to continue to move the case forward. (Johnson Decl. ¶ 31.) Plaintiffs' counsel also regularly spoke with various opt-in members of the collective action to answer their questions and to obtain factual information to support Plaintiffs' position. (Johnson Decl. ¶ 32.) Appropriate tasks were delegated to various other legal professionals when appropriate. (Johnson Decl. ¶ 33.)

Throughout this litigation, Counsel for the parties had informal discussions regarding settlement and ultimately agreed to mediate this matter. (Johnson Decl. ¶ 34.) Prior to mediation, the Parties engaged in preliminary discovery including Defendants production of five payroll Time Entry Audits, each in separate Excel spreadsheets, which contained each original and modified punch for Defendants' employees. (Johnson Decl. ¶ 35.) Plaintiffs' counsel manipulated this information into a more usable form, and in using other documents produced by Defendants and the information provided by Plaintiff, developed various damage models. Plaintiffs' Counsel shared this information with Defendants and Defendants produced to Plaintiffs their own damage calculations. These differing models assisted the parties in determining potential damages in the case at mediation and assisted in obtaining a resolution in the matter. (Johnson Decl. ¶ 36.) The parties retained the services of Attorney Michael Leech as the mediator in this matter. The parties mediated for the full day on Sunday November 13th, 2011, and successfully reached a partial resolution that evening. (Johnson Decl. ¶ 13.)

The settlement negotiations in the case were entirely at arm's-length. (Johnson Decl. ¶ 37.) The settlement reflects the results of an extensive analysis of both the merits of the Plaintiffs' claims and the strength of Defendants' defenses. Since the mediation, the parties have shared information regarding Defendants' financial status. After reviewing the financial

documents submitted by Defendants, it was determined that the best course of action was to resolve the case for the remainder of the policy limits. (Johnson Decl. ¶ 38.) Assuming that the Offer of Judgment receives the Court's approval, Plaintiffs' Counsels' obligations will continue during the claims process and thereafter in dealing with questions and concerns of the class members.

Plaintiffs' Counsel has invested more than 250 hours in legal services in prosecuting this litigation. (Johnson Decl. ¶ 39.) Pursuant to the Court's request, a verified statement of attorneys' fees has been filed contemporaneously with the Court, along with a verified statement of costs. It is Plaintiffs' Counsel's practice to maintain detailed and contemporaneous records of all attorney and staff billable time. (Johnson Decl. ¶ 40.) As of the end of June and not including the time it took to draft this memorandum, Plaintiffs' Counsel's loadstar is $64,103.50. (Johnson Decl. ¶ 41.)

Attorneys' fees and costs are recoverable under the FLSA and state wage and hour statutes at issue in this litigation. *See* 29 U.S.C. § 216(b); Wis. Stat. §109.03(6). Plaintiffs' Counsel accepted the case on a 33.33% contingency basis, exclusive of costs, bearing the entire risk in the event that there was no recovery. (Johnson Decl. ¶ 42.) Importantly, Plaintiffs' Counsel would receive no payment for attorneys' fees or reimbursement for costs incurred if the litigation was unsuccessful. The fee agreement in this matter is commonly used by Plaintiffs' Counsel in similar class and collective action lawsuits for unpaid wages.

The court should award attorneys' fees as a percentage of the total settlement because that arrangement, based on Plaintiffs' Counsel's agreement with the Named Plaintiff, most closely replicates the market for the legal services provided. *See e.g., McKinnie v. JP Morgan Chase Bank*, 678 F. Supp. 2d 806 (E.D. Wis. Dec. 31, 2009) (approving attorney fees of 30% of

total settlement because the "market rate" for the legal services provided by class counsel "is a contingency fee"); *see also Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee is the 'market rate'"."); *Gilliam v. Addicts Rehabilitation Center Fund*, 2008 U.S. Dist. LEXIS 23016 at 15 (S.D.N.Y. March 24, 2008) (33.33% award "consistent with norms of class litigation"). Moreover, the 33.33% figure is far less than the loadstar figure.

Accordingly, Plaintiffs' Counsel seeks one-third of the total value of the settlement as compensation for their fees. An award of 33.33% falls within the normal percentage range of attorney fee awards approved by courts. *See* 4 Newberg on Class Actions § 14:6, p. 558 (4th ed.15 2002) (citing a 1996 Federal Judicial Center Study finding that fee awards in common fund class actions were between 20% and 40% of the gross monetary settlement). Plaintiffs' Counsel faced significant risks in this litigation, based upon the strength of the defenses asserted by Defendants as well as the risks incident to maintaining collective action certification and obtained a favorable result for Plaintiffs and the collective action members. Accordingly, the Parties request that the Court approve the payment of attorneys' fees in the amount of $23,666.67 plus costs in the amount of $3,820.49 as part of the parties' negotiated settlement.

### F. The incentive payment for the Named Plaintiff is reasonable.

The Parties have requested that the Court authorize incentive compensation in the form of enhancement payments to the Named Plaintiff in the amount of $5,000.00, for the time and effort devoted in pursuing the present litigation. These amounts were negotiated as part of the settlement package and will not diminish the recovery contemplated for each individual class member. The Named Plaintiff assisted greatly in prosecuting this matter; moreover, it is her name in the public spotlight as the individual who brought action against her employer. (Johnson Decl. ¶ 43.) The identity of the opt-in Plaintiffs, although in the public record, remains buried in

other filings. The significance of this cannot be understated. In this economy, employees are increasingly concerned that the institution of litigation will negatively impact their ability to find employment in the future. The Named Plaintiff took the bold step to initiate an action when others did not.

In addition to being the source of the information for the allegations, the Named Plaintiff provided Plaintiffs' Counsel with boxes of payroll records which Plaintiffs' Counsel utilized in establishing a claim. (Johnson Decl. ¶ 44.) Moreover, the Named Plaintiff assisted in reviewing the documents produced in discovery to determine what the damages were. (Johnson Decl. ¶ 45.) Additionally, the Named Plaintiff traveled to Milwaukee for the weekend to attend a Sunday mediation. (Johnson Decl. ¶ 46.) After filing the complaint, and through this date, the Named Plaintiff has provided valuable assistance to Plaintiffs' Counsel and has at all times been readily available to assist Plaintiffs' Counsel. (Johnson Decl. ¶ 47.)

The Seventh Circuit recognizes that enhancement payments are appropriate in such circumstances and look to the following relevant factors: actions plaintiff took to protect the class's interests, degree to which the class benefitted from those actions, and the amount of time and effort plaintiff expended in pursuing litigation. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). The proposed award in this case is reasonable in comparison to awards approved by other courts in this Circuit, which range as high as $20,000 per named plaintiff. *See Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 U.S. Dist. LEXIS 1819 (S.D. Ill. Jan. 22, 2004). Through Plaintiff's actions, significant benefits have been achieved on behalf of all opt-in Plaintiffs and current employees. Since this suit, Defendants have modified the way in which they compensate their employees. Accordingly, the parties submit that preferential treatment of

the named Plaintiff is fair and reasonable under the circumstances and request the Court approve the proposed incentive award to the named Plaintiff.

## V. Conclusion

The parties respectfully submit that the settlement is a fair and reasonable resolution of disputed issues of fact and law and should be approved by the Court. Such approval will "secure the just, speedy and inexpensive determination" of this action. *See* Fed. R. Civ. P. 1.

Dated this 6th Day of July, 2012.  Dated this 6th Day of July, 2012.

**CROSS LAW FIRM, S.C.**  **Kasdorf, Lewis & Swietlik, S.C.**
*Attorneys for Plaintiff*  *Attorneys for Defendants*

 s/LARRY JOHNSON   s/DUSTIN WOEHL
Larry A. Johnson  Dustin T. Woehl
ljohnson@crosslawfirm.com  dwoehl@kasdorf.com
Nola J. Hitchcock Cross  Matthew Clabots
njhcross@crosslawfirm.com  mclabots@kasdorf.com
The Lawyers Building  11270 W Park Place, 5th Floor
845 N. 11th Street  Milwaukee, WI 53224
Milwaukee, WI 53233  414 577 4000
414-224-0000  414 577 4078 (direct)